JOHNNIE MAE ISHMAL, DEFENDANT-APPELLANT, v. DI-
VISION OF ALCOHOLIC BEVERAGE CONTROL AND JO-
SEPH KEEGAN, DIRECTOR OF THE DIVISION OF AL-
COHOLIC BEVERAGE CONTROL, PLAINTIFFS-RESPON-
DENTS.

Argued March 9, 1971—Decided May 24, 1971.

*Miss Nadine Taub* argued the cause for appellant (Community Legal Action Workshop, attorneys; *Miss Taub,* of counsel; *Mr. Martin Cazakoff,* Newark-Essex Joint Law Reform Project, on the brief).

*Mr. Stephen Skillman,* Assistant Attorney General of New Jersey, argued the cause for respondents (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Skillman,* of counsel and on the brief; *Mr. Charles R. Parker,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

SCHETTINO, J. Pursuant to a plenary liquor consumption license, covering the licensing period July 1, 1967 to June 30, 1968, Mrs. Johnnie Mae Ishmal operated a tavern, the Back Room, in Newark, N. J. On June 20, 1968, following a disciplinary hearing, the Newark Municipal Board of Alcoholic Beverage Control revoked Mrs. Ishmal's license. The State Director of the Division of Alcoholic Beverage Control affirmed the action of the municipal licensing authority. On appeal, in an unreported *per curiam* opinion, the Appellate Division concluded that the Director's determinations were supported by substantial evidence in the record. We agreed to review the matter.

By *N. J. S. A.* 33:1–31(g), local licensing authorities [here the Newark Board of Alcoholic Beverage Control, *N. J. S. A.* 33:1–5.1] are granted power to "suspend or revoke any license issued by it, for * * * [a]ny violation of rules and regulations. * * *" *See, Benedetti v. Bd. of Com'rs of Trenton,* 35 *N. J. Super.* 30 (App. Div. 1955); *Voight v. Board of Excise,* 59 *N. J. L.* 358 (Sup. Ct. 1896). It was

pursuant to this statutory authority that the Board in the present case acted to revoke Mrs. Ishmal's license, finding that certain conduct occurring in and around the Back Room Tavern violated rules 4 and 5 of the State Liquor Regulation 20. Insofar as they are here pertinent to the instant appeal, those rules provide:

Rule 4. No licensee shall allow, permit or suffer in or upon the licensed premises * * * any unlawful possession of or any unlawful activity pertaining to narcotic drugs as defined by R. S. 24:18–2 * * *

Rule 5. No licensee shall engage in or allow, permit or suffer in or upon the licensed premises any * * * immoral activity * * * nor shall any licensee allow, permit or suffer the licensed place of business to be conducted in such manner as to become a nuisance.

The Municipal Board specifically concluded that the Back Room Tavern had become a "hang out" for narcotics addicts and "pushers" and constituted a nuisance; that drug traffic was rampant on the licensed premises; that the licensee's efforts to eliminate the drug problem on the licensed premises were merely "token"; and that the revocation of Mrs. Ishmal's license was an appropriate sanction for suffering such a nuisance to exist.

In affirming the findings and conclusions of the Municipal Board, the Director held that the record made before the local board supported an inference that arrangements for the sale and procurement of drugs were concluded on the licensed premises and that such arrangements constituted "unlawful activity" within Rule 4; that the mere "congregation of drug addicts" or "the mere presence of a person for the purpose of selling, obtaining, transferring or using such drugs" is immoral activity and a nuisance within Rule 5; and that Mrs. Ishmal suffered both sorts of conduct to exist.

On this appeal, the licensee argues that the findings of violations and the imposition of sanctions were error, contending that her persistent efforts to eradicate the problems caused by the presence of drug addicts and pushers on the premises belie the conclusion reached below, that she "allowed, permitted or suffered" any conduct proscribed by the

rules. We agree with Mrs. Ishmal that her conduct convincingly demonstrates that she did not permit, allow or suffer rule violations to occur in any manner.

At the disciplinary hearing, several members of the Newark Police Department testified to the effect that the tavern and its immediate vicinity were focal points of narcotics activity; and that on account of the "continuous pattern" of illicit drug traffic present there, the tavern had been kept under constant police surveillance from December 1965 through the end of 1967. At least 20 persons were arrested, approximately half of them on the tavern premises, for the sale or possession of narcotics during this period. Of those persons arrested outside the tavern, all had been in and out of the premises several times just prior to consummation of their illicit transactions and subsequent arrests.

The scope of the drug activity is not, however, fully reflected in these arrest statistics. In the opinion of each officer, the tavern was "a source of heavy narcotic activity" or "a distributing center for drug pushers and addicts." Mrs. Ishmal herself conceded of the use, possession and sale of narcotics in and around the premises, that "[t]here was a problem." Indeed, she stated quite openly that the disorderly behavior of addicts compelled her to make some 75 to 100 complaints to the police; that addicts caused much physical damage to the property; and, according to one detective with whom she communicated, that addicts "were ruining her business." Finally, both parties agreed that addicts and traffickers were frequent and, we gather, constant patrons of the tavern.

The record is clear, however, that Mrs. Ishmal seriously endeavored to eradicate the drug problem in and around the tavern property. Indeed, she had strong incentive to do so since, by her testimony, addicts had been responsible for causing the tavern much physical damage. Mrs. Ishmal stated that, as noted above, she had called the police 75 to 100 times with complaints relative to narcotics, that she had a policy of refusing to serve and ejecting persons under the

influence of drugs and that she instructed her bartenders to do the same. Although Mrs. Ishmal admitted that addicts not under narcotic influence were served in the tavern, she stated this service was pursuant to police instructions to serve such persons provided they did not cause disturbances. Finally, Mrs. Ishmal revealed that she had previously operated a tavern around the corner from her present location and had not experienced any "problem" with addicts and pushers.

Mrs. Ishmal's efforts to eliminate the tavern's drug difficulties were attested to by two Newark City police officers. Detective Cottrell stated that he was called on "at least fifty occasions" by Mrs. Ishmal or her employees and asked "to assist her in whatever manner that I could in helping her to get rid of the [narcotic problem]." He added that not only did Mrs. Ishmal request his aid but she fully cooperated with his efforts by instructing her son, who worked as a bartender on the premises, to render the detective whatever assistance was necessary. Detective Ballard stated that he, too, received numerous calls from Mrs. Ishmal complaining that "drug addicts * * * were ruining her business and selling narcotics on the street"; that two in-tavern arrests for illicit drug sales were the direct result of these complaints; and that Mrs. Ishmal furnished him with the names and descriptions of persons known to her to be pushers. But despite these good faith attempts on the part of the licensee and the cooperation of the police to prohibit regulatory violations and criminal offenses, they continued unabated.

Rules 4 and 5 of State Regulation 20 promulgated by the Director impose on the licensee the responsibility, at the peril of its license, for precluding offensive and unlawful conduct in its establishment during the licensing year. *One Eleven Wines & Liquors, Inc. v. Division of Alcoholic Bev. Cont.*, 50 *N. J.* 329, 340 (1967). In our view, the record convincingly demonstrates that Mrs. Ishmal met her responsibility in this respect. Her good faith efforts to control the

drug problem preclude a finding that she was guilty of wrongdoing; and, it clearly appears that the tavern's character as a "trouble spot" of narcotics activity was due to its physical location rather than culpable conduct on her part. We think it clear, therefore, that Mrs. Ishmal did not "allow, permit or suffer" the drug problem at the tavern; and without that element the finding that Rules 4 and 5 were violated cannot stand.

It, of course, does not follow that the licensing authorities could not, in such circumstances, protect the public interest by appropriate action. The licensing authorities could refuse to permit the continuation of the business at that location. But, where the problem thus inheres in the location, rather than the quality of the licensee's performance, the licensee in fairness should be offered a chance to secure another location. Accordingly, the judgment of the Appellate Division is reversed; and the matter remanded to the Newark Municipal Board of Alcoholic Beverage Control with direction to permit Mrs. Ishmal to apply promptly for a place-to-place transfer of the license to a suitable location.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.